UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DEBBIE BRENT,

        Plaintiff,

v.                          Case No:   2:14-cv-52-FtM-38DNF

SOURCE INTERLINK
DISTRIBUTION, LLC and SOURCE
INTERLINK COMPANIES, INC.,

        Defendants.
_____/

### ORDER[1]

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law (Doc. #6) filed on March 13, 2014. Although given the opportunity, Plaintiff has not filed a response in opposition and the deadline to do so has now expired. This matter is now ripe for review.

**Background**

The plaintiff in this matter is Debbie Brent and the defendants in this matter are Source Interlink Distribution, LLC and Source Interlink Companies, Inc. Brent, a female, has over 23 years of experience in the publishing industry. (Doc. #1, ¶¶2, 15). Brent began working for the Source Defendants in September 2007 where she served as the Vice

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

President of Promotions and Marketing at Source Interlink Distribution, a division of Source Interlink Companies, Inc. (Doc. #1, ¶¶2, 15). In this role, Brent reported to the highest executive in the Sales and Distribution Division, who then reported directly to the President and Chief Executive Officer of the company. (Doc. #1, ¶15).

While working at Source, Brent experienced five management changes with a pattern of reduction in her reporting stature. (Doc. #1, ¶15). Terry McGraw, a male, began working for Source Interlink Companies, Inc. in July 2011 as Senior Vice President of Corporate Sales & Marketing. (Doc. #1, ¶¶15-16). McGraw became Brent's final supervisor at Source. (Doc. #1, ¶15). During this time Brent reported four levels below the President and Chief Executive Officer. (Doc. #1, ¶15).

When McGraw joined the team in July 2011, he was accompanied by another new male employee named Steve Leach, a male, who served as Executive Vice President of Sales & Marketing for Source Interlink Distribution, LLC. (Doc. #1, ¶16). The job positions McGraw and Leach served were newly created positions that were not advertised for applicants. (Doc. #1, ¶16). Also, in August 2011, Hugh Shannon was hired as Vice President of Product Management, a position that was also not advertised. (Doc. #1, ¶16). Brent alleges her credentials would have made her as qualified, if not more, than the three individuals hired in Source's newly created positions. (Doc. #1, ¶16).

In May 2012, Brent was the only female vice president out of twelve for Source Interlink Distribution, LLC. (Doc. #1, ¶17). Brent alleges she was systematically excluded from important activities in which the other male vice presidents routinely participated in. (Doc. #1, ¶17). These activities included informal business dinners, golf outings, and high-

level budget-planning meeting of all department heads. ([Doc. #1](), ¶17). Brent was not invited to these kind of activities. ([Doc. #1](), ¶17).

Brent also alleges she no longer reported directly to the highest ranking officer, the President and Chief Executive Officer, in the Source Interlink Distribution, LLC but instead reported to McGraw. ([Doc. #1](), ¶18). Whereas, all male vice presidents maintained their reporting structure level. ([Doc. #1](), ¶18). Accordingly, Brent was "shuffled around" more than any of her male counterparts. ([Doc. #1](), ¶18).

In addition, Brent alleges McGraw had a reputation in the industry for making degrading comments, disrespectful gestures, and facial expressions toward women. ([Doc. #1](), ¶19). There were incidents where McGraw allegedly yelled at Brent whereas McGraw did not yell at his male subordinates. ([Doc. #1](), ¶¶20-21).

On June 5, 2012, McGraw accused Brent of being resistant to change and taking a negative approach. ([Doc. #1](), ¶21). McGraw also referred to Brent as "kicking and screaming," "completely out of line," and "crazy." ([Doc. #1](), ¶21). In response to McGraw's behavior, on June 6, 2012, Brent wrote McGraw an email where she complained of being "bullied" by McGraw's attitude, words, and tone. ([Doc. #1](), ¶22). Brent mentioned she had never before received such negative comments or had a similar phone conversation with her manager in her 28-year career. ([Doc. #1](), ¶22). Brent also discussed that the conversation between her and McGraw was "truly horrific" and she believed was designed by McGraw to make her uncomfortable enough to quit. ([Doc. #1](), ¶22). Cynthia Beauchamp, the in-house counsel for Source, was also copied on this June 6th email. ([Doc. #1](), ¶22).

Thereafter, on June 13, 2012, Brent met with Rosanna Lombardi who worked in the Source human resources department to discuss the June 5th conversation with McGraw. (Doc. #1, ¶23).  Brent told Lombardi that McGraw did not treat male employees in a similar manner. (Doc. #1, ¶23). Lombardi advised Brent that she would relay the conversation she had with Brent to the in-house counsel of Source. (Doc. #1, ¶23). Brent sent a follow-up email to Lombardi, stating she continued to be "disturbed and distracted by the impact of this abusive, bullying and intimidating behavior," and asking for the "next steps once you have the opportunity to communicate our conversation today with Cindy [Beauchamp]." (Doc. #1, ¶23). Brent, however, did not receive a response to her complaint from the human resources department. (Doc. #1, ¶24).

On or about July 30, 2012, Lombardi told Brent she spoke with McGraw. (Doc. #1, ¶24). McGraw reacted by stating Brent's performance was "bad" and he perceived Brent to be "frustrated" due to undefined "continuing performance issues." (Doc. #1, ¶24). Lombardi informed Brent she would need to speak with McGraw directly for more details. (Doc. #1, ¶24). When Brent later spoke to McGraw, McGraw was unable to provide an instance that warranted the "bad" performance statement. (Doc. #1, ¶25). Moreover, Brent had not received a performance evaluation since 2010, before McGraw joined Source, and none of Brent's performance evaluations were negative. (Doc. #1, ¶25).

On August 9, 2012, Brent was fired. (Doc. #1, ¶26). Brent's termination was described to be part of a reduction in force. (Doc. #1, ¶26). All male vice presidents in Source Interlink Distribution, LLC were retained, including Shannon. (Doc. #1, ¶26). Shannon had less tenure and fewer responsibilities. (Doc. #1, ¶26). In addition, Source

hired a new male vice president, Jay Wysong, into another newly created position in October 2012. (Doc. #1, ¶26).

On August 28, 2012, Brent filed a Charge of Discrimination with the Equal Employment Opportunity Commission and the Florida Commission on Human Relations. (Doc. #1, ¶7). The EEOC on or about October 30, 2013, issued Brent a Dismissal and Notice of Rights. (Doc. #1, ¶8). Also, more than 180 days elapsed from Brent filing the Charge of Discrimination with the Florida Commission on Human Relations. (Doc. #1, ¶9). Brent initiated a four count lawsuit against the Source Defendants on January 29, 2014. Count I is a sex discrimination claim brought pursuant to Title VII of the Civil Rights Act. Count II is a sex discrimination claim brought pursuant to the Florida Civil Rights Act. Count III is a retaliation claim brought pursuant to Title VII of the Civil Rights Act. Count IV is a retaliation claim brought pursuant to the Florida Civil Rights Act. The Source Defendants move to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## Standard

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiffs.  Christopher v. Harbury, 536 U.S. 403, 406, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002). Under Rule 8 of the Federal Rules of Civil Procedure, stating a claim upon which relief may be granted requires that enough factual matter is pled to make relief plausible. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 561–63, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (aboragating Conley v. Gibson, 355 U.S. 41, 45–46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Although detailed factual

allegations are not required, a plaintiff's obligation to provide the "grounds" of his "entitlement" to relief requires more than labels, conclusions, and a formulaic recitation of the cause of action's elements.  Id. at 561–63. Thus, a complaint must state more than an unadorned, "the-defendant-unlawfully-harmed-me accusation."  Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1268 (11th Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 677, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).  Additionally, unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of the allegations. Id. (citing Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005)). Accordingly, the facts as pled must state a claim for relief that is plausible on the face of the pleading. Id. (citing Iqbal, 129 S. Ct. at 1950).

**Discussion**

    i.   Discrimination

In order to establish a *prima facie* case of discrimination, a plaintiff must show she was a member of a protected class, was qualified for the position, suffered an adverse employment action, and was replaced by a person outside her protected class or was treated less favorably than a similarly-situated individual outside her protected class. Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ., 342 F.3d 1281, 1289 (11th Cir. 2003) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).  In addition, with regard to a plaintiff terminated as part of a reduction in force, she must show she was a member of a protected class, was adversely affected, was qualified for another position at the time of discharge, and there is some evidence from which a fact-finder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue. Rowell v. BellSouth Corp., 433 F.3d 794, 798 (11th Cir.

2005) (citing Williams v. General Motors Corp., 656 F.2d 120 (5th Cir. Unit B Sept. 1981)). The Source Defendants argue Brent has failed to allege a proper sex discrimination claim. For example, the Source Defendants argue the facts in the complaint contradict her charge of discrimination because the complaint alleges she was the only female vice president, however, the charge indicated there were other female employees. The Court will not shift through these factual disputes at the motion to dismiss stage. Rather, the Court will focus on the operative Complaint and its allegations as if they are true. Christopher, 536 U.S. at 406.

In addition, the Source Defendants assert Brent has failed to properly allege a claim for sex discrimination because she does not allege the new male vice president was hired to replace her or that she was qualified for the position. The Court finds this argument to be untrue and misleading. Especially in light of the Complaint plainly stating that Brent was qualified for Wysong's positions as well as the other vice president positions occupied by male employees. There are enough facts in the complaint to allege a *prima facie* case of discrimination.

The Source Defendants lastly argue since McGraw was terminated from his job also and was not a decision-maker with regard to Brent's termination, his bias toward her is irrelevant. The Court finds this factual argument to be unpersuasive and premature for the current motion to dismiss stage. The factual issues surrounding McGraw's purported bias may be relevant to the Source Defendants' conduct or lack thereof. Otherwise, if the facts regarding McGraw are superfluously stated in the Complaint, they are not harmful to the overall allegations now simply because they may not be necessary to the underlying claims later. Thus, the Court finds no harm in including these facts now. Overall, the Court

finds Brent has properly alleged a claim for discrimination pursuant to Title VII and FCRA and therefore, the motion to dismiss is due to be denied on this issue.

ii.   Retaliation

In order to establish a *prima facie* case of retaliation, a plaintiff must show she was engaged in statutorily protected activity, she suffered a materially adverse action, and there is some causal relation between the two events. Hopkins v. Saint Lucie Sch. Bd., 399 Fed.Appx 563, 566 (11th Cir. 2010) (citing McCann v. Tillman, 526 F.3d 1370, 1375 (11th Cir. 2008); Burlington N. and Sante Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). The Source Defendants argue even assuming the first two elements of the *prima facie* case are satisfied, Brent's retaliation claim must be dismissed because she failed to plead any facts to show she was terminated because of her purported protected activity. The Source Defendants rely on two cases: Ayubo v. City of Edgewater, No. 6:08-cv-1197-Orl-31GJK, 2009 WL 113381, at *8 (M.D. Fla. Jan. 16, 2009) and Ney v. Adventist Health Sys., No. 6:13-cv-1013-Orl-31TBS, 2013 WL 3906553 (M.D. Fla. July 29, 2013).

The Court disagrees with the Source Defendants and finds the two cases that the Source Defendants rely on to be distinguishable. In Ayubo, the plaintiff brought a number of claims pursuant to Title VII of the Civil Rights Act and 42 U.S.C. § 1981. Ayubo, 2009 WL 113381, at *1. The Court dismissed the plaintiff's retaliation claim because plaintiff failed to allege a causal connection between plaintiff's complaints to his supervisors and the alleged retaliatory conduct. Id. at *3. The Court finds the Ayubo case to be distinguishable because here Brent has alleged that she complained to individuals in the human resource department but soon thereafter was terminated. Also, Brent specifically

alleges "because of her protected activity" the Source Defendants discriminated against her.

In addition, in Ney plaintiff brought a handicap discrimination claim pursuant to the FCRA. Ney, 2013 WL 3906553 at *2. This claim was dismissed because the Court found the complaint was devoid of allegations regarding Ney's handicap or the nature of her job. Id. The Court finds the Ney case to be distinguishable because Brent here has provided sufficient evidence regarding her protected activity, the adverse action, and a causal connection. Again, Brent specifically alleges "because of her protected activity" the Source Defendants discriminated against her. Plaintiff has alleged that the decision-makers were aware of the protected conduct and that there was a close temporal proximity between this awareness and the adverse employment action. Accordingly, the complaint is sufficient to survive the Source Defendants' motion to dismiss. Neal-Myers v. Florida Dept. of Corrections, No. 2:11-cv-654-FtM-29DNF, 2014 WL 988749, at *4 (M.D. Fla. Mar. 13, 2014) (finding since the complaint suggested there was a causal connection between the incident and plaintiff's termination it was enough to survive a motion to dismiss); Mulloney v. Florida Dept. of Transp., No. 8:13-cv-2783-T-30TBM, 2014 WL 67653, at *3 (M.D. Fla. Jan. 8, 2014) (finding a complaint sufficient enough to survive the motion to dismiss when a plaintiff complained and thereafter was terminated about a month later); see also Singh v. Green Thumb Landscaping, Inc., 390 F.Supp.2d 1129, 1139-40 (M.D. Fla. 2005) (citing Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999)).

Accordingly, it is now

**ORDERED:**

Defendants' Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law (Doc. #6) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 28th day of March, 2014.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record